UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FREDDIE MATTHEWS, | Case No. 3:10-cv-65 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 16) (ALJ's decision)).

I.

On June 3, 2004, Freddie Matthews filed applications for DIB and SSI benefits, alleging in his DIB application that he became disabled on February 28, 2002 (Tr. 52-55), and in his SSI application that he became disabled on January 1, 2003 (Tr. 556-59), due to symptoms associated with hepatitis C, diabetes, acid reflux disease, and problems stemming from a gunshot wound. (Tr. 72-73).

Upon denial of Plaintiff's claims at the state agency levels, he requested a hearing *de novo* before an ALJ. (Tr. 41). A hearing was held on September 19, 2007, at which Plaintiff appeared with his attorney and testified. (Tr. 569-89). A vocational expert also testified. (*Id.*)

In a decision dated February 7, 2008, the ALJ entered his decision finding that Plaintiff was disabled as of his fifty-fifth birthday, however he was not disabled prior to that date because he was able to perform a significant number of jobs in the national economy. (Tr. 15-26). Plaintiff requested review of the unfavorable portions of the ALJ's decision, and on December 16, 2009, the Appeals Council denied review of the ALJ's decision (Tr. 4-6), at which point the ALJ's decision became the final decision of the Commissioner of Social Security.

The ALJ noted that Plaintiff could not perform any past relevant work. (Tr. 23). As of August 1, 2006, the ALJ found that Plaintiff's age, education, and work experience, combined with residual functional capacity, led to a finding of disabled based on a direct application of the Medical-Vocational Guidelines "Grids" Rule 202.06. (Tr. 25). Accordingly, the ALJ found that Plaintiff was disabled prior to August 1, 2006, and continued to be disabled through the date of the decision. (Tr. 25). Prior to August 1, 2006, the ALJ believed that there was other work Plaintiff could perform. (Tr. 24). Accordingly, the ALJ did not believe that Plaintiff was disabled as defined by the Social Security Act prior to August 1, 2006 or before his date last insured of March 31, 2003. (Tr. 25).

Plaintiff was 55 in 2006 and was 56 years old on the date of the ALJ's decision. (Tr, 26, 52). He had a high school equivalency diploma ("GED"). (574). Prior to the onset of his alleged disability, he had worked as a book binder, rust proofer, and laundry separator. (Tr. 116).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act on March 31, 2003.

2. The claimant has not engaged in substantial gainful activity since February 28, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: insulin-dependent type II diabetes mellitus, severe degenerative joint disease of both hips, chronic cervical and lumbosacral strain/sprain, hepatitis C, Parsonage-Turner Syndrome of the left shoulder, the residuals of a remote gunshot wound to the chest, depressive disorder, anxiety disorder, and a very strong history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, which is defined as lifting 10 pounds frequently, 20 pounds occasionally, and walking or standing for up to 6 hours in a normal workday (20 CFR 404.1567 and 416.967). Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he is limited to jobs that would allow him to sit for a total of four hours a day and stand/walk or a total of four hours. He should not be expected to sit, stand, or walk for more than two hours at a time without interruption. He is limited to jobs that would not require reaching overhead with the left upper

-3-


extremity. All posturals can be performed on an occasional basis. Reaching, pushing, pulling, and fine manipulation can be performed on an occasional basis. He is further limited to work that would not involve climbing ladders, ropes, or ladders. He is restricted to jobs that would not involve working at unprotected heights or around heavy industrial machinery, such as cutters or beaters. He is further restricted to work that would not require driving as a job duty. He is limited to low stress work, which in this case is defined as no direct dealing with the public, no production quotas, and no close or "over-the-shoulder" supervision.

6. The claimant is unable to perform any past relevant work (20 CFR 303.1565 and 416.965).

7. The claimant was 50 years old on the alleged onset date of disability. This is defined in the regulations as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963). On August 1, 2006, the claimant attained 55 years of age and his age category changed to an individual of advanced age (20 CFR 416.120(c)(4) and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to August 1, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on August 1, 2006, the claimant has not been able to transfer any job skills to other occupations (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to August 1, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. Beginning on August 1, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant was not disabled prior to August 1, 2006, but became disabled on that date and had continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2003, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 18-25).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to disability insurance benefits through March 31, 2003, the date last insured. (Tr. 25). However, based on the application for SSI protectively filed on June 2, 2004, the claimant has been disabled since August 1, 2006. (Tr. 26).

On appeal, Plaintiff argues that the ALJ erred in his evaluation of the treating physician opinion. The Court will address this argument in detail.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon

which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

Plaintiff claims that the ALJ erred in his evaluation of the treating physican's opinion.

The record reflects that:

When Plaintiff filed for benefits, he reported that he was disabled by the combination of his illnesses. He noted in particular that the Hepatitis C[1] made him feel weak and tired all the time. He indicated that he could not lift anything over 10 pounds.

---

[1] Plaintiff contracted Hepatitis C from massive transfusions while serving in the military in Okinawa in the 1970's. (Tr. 325).

-6-

(Tr. 73). A liver biopsy on April 1, 2003, documented chronic Hepatitis C. (Tr. 322-23).

A psychologist, Dr. Verdaguer, evaluated Plaintiff on June 11, 2003, for Interferon[2] to treat his Hepatitis C. Plaintiff reported that he did not have any current symptoms of depression, although he admitted his energy level was slightly low. At the time of the evaluation, Plaintiff reported he had been cocaine free for 5-6 months and alcohol free for 7-8 months.[3] (Tr. 320). The psychologist noted that Plaintiff's mood was euthymic, his insight was limited, and judgment was fair. (Tr. 321). While a screening test showed mild to moderate depression, most of his concerns related to problems with concentration. (*Id.*) Plaintiff continued Interferon treatment for about eight weeks, but stopped because the medications made him tired. (Tr. 309, 311-12, 317-18).

Plaintiff was also treated at the VA for his diabetes. (Tr. 267-99). For example, he was admitted to the hospital for increased thirst, tiredness, increased urination, and weight loss in May 2004. (Tr. 286). His blood sugar was elevated and he was placed on insulin treatment. (Tr. 276, 293). He continued to receive group diabetes counseling. (Tr. 252-61).

In July 2004, Plaintiff was referred to the Health Psychology by the Diabetes Clinic due to concerns about stress and depression. He reported feeling depressed over

---

[2] Interferons are proteins made and released in response to the presence of pathogens - such as viruses, bacteria, or parasites – or tumor cells. They allow communication between cells to trigger the protective defenses of the immune system that eradicate pathogens or tumors.

[3] Plaintiff had a previous history of substance abuse and was treated at the VA on several occasions. (Tr. 119-23, 371-96, 338-52).

the past three to four months because of his multiple chronic medical problems as well as family stressors, unemployment and guilt over past behaviors. (Tr. 251). On examination, Plaintiff was pleasant and cooperative and his mood was dysphoric but primarily sad. Dr. Verdaguer diagnosed an adjustment disorder with depressed mood, rule out major depressive disorder. He noted that Plaintiff seemed "motivated to seek assistance yet seems to have limited coping resources." (Tr. 252). Dr. Verdaguer referred Plaintiff to the VA's mental health center for medication evaluation and counseling. (*Id.*)

The State agency also sent him to Dr. Olson, on October 2004 for a psychological evaluation. (Tr. 127-32). On mental status examination, his affect was appropriate and his mood seemed stable, but had difficulty sleeping and napped during the day. (Tr.129). Dr. Olson noted that Plaintiff's concentration and attention skills were fair to poor during the interview. Dr. Olson noted that Plaintiff appeared to rely a great deal upon his fiancé for managing his daily affairs including household management and money management. (Tr. 103). Dr. Olson assigned a GAF of 53[4] and noted mild to moderate limitations. (Tr. 131-32). Plaintiff began treatment in a depression group in November 2004. (Tr. 246-47).

---

[4] The Global Assessment of Functioning ("GAF") is a numeric scale (1 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A GAF of 51-60 indicated moderate symptoms (e.g., flat affect adn circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functining (e.g., few friends, conflicts with peers or co-workers).

In January 2005 a State agency psychologist reviewed the file. (Tr. 142-59). The reviewing psychologist thought that Plaintiff could perform simple repetitive tasks. "Stress tolerance is not substantially impaired for simple routine tasks without fast-paced production requirements." (Tr. 158). The claimant was considered credible. (*Id.*)

Plaintiff also continued with his primary care treatment at the VA, primarily with Dr. Rivera. In March 2005, he was concerned because he had no energy and was fatigued. (Tr. 236). In October 2005, Dr. Rivera saw Plaintiff for his continued chronic pain. An echogram of the abdomen showed a three-centimeter mass in the liver not previously seen on imaging studies. (Tr. 222).

Plaintiff also had problem with his left shoulder. He was seen in urgent care on January 26, 2006, because he could not raise his left arm past 90 degrees. (Tr. 186). An x-ray of the shoulder showed no acute fracture or dislocation but there was shrapnel in the left upper chest. (Tr. 221). He was again seen for pain and weakness in the shoulder on January 31, 2006. (Tr. 182). He was seen for a physical therapy evaluation and attended a few sessions. (Tr. 177-83).

Plaintiff was seen by psychiatry at the VA on February 23, 2006. He was calmer than before but he reported that he continued to feel irritable at times. On mental status examination his mood was less depressed and mildly anxious. Dr. Mahajan, diagnosed an adjustment disorder with mixed emotions; alcohol dependence in remission for three years; and cocaine abuse in early remission. Dr. Mahajan increased Plaintiff's medications. (Tr. 173). A month later, Plaintiff was seen by Dr. Papadakis in group

therapy. Dr. Papadakis assessed a GAF of 45[5] and recommended that Plaintiff be seen on a weekly basis to help him manage depression and anxiety. (Tr. 172).

In April 2006, Plaintiff continued to experience limited movement of the left shoulder. He also had some tingling sensation and numbness of his fingers for the prior month. (Tr. 166). His hypertension was considered uncontrolled and the doctor felt a vascular problem should be ruled out. (Tr. 167). A CT of the head was negative for vascular problems, but there were prominent ventral spurs noted at C2-3. (Tr. 220).

Plaintiff continued treatment at the VA. By October 2006, there was some wasting of muscle in the left shoulder and he had difficulty raising or rotating his left arm without assistance. (Tr. 444). In December 2006, he was seen in urgent care for right heel pain and continued left shoulder pain. Plaintiff had surgery on the heel in February 2007. (Tr. 532-33). In March 2007, the incision site was considered well healed, but he was still using a cam walker.[6] (Tr. 484-85).

In February 2007, Plaintiff reported that he continued to be under a lot of stress due to family illness and his own multiple medical problems. Plaintiff reported he had not used alcohol or cocaine since he was seen a year earlier, although he did take his wife's Ativan at times to help with sleep. (Tr. 516). On mental status examination his

---

[5] A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

[6] The "cam walker" design is a lower extremity boot that provides support, protection and immobilization of the ankle after injury or surgery.

-10-

mood was depressed and anxious. Dr. Mahajan continued to diagnose an adjustment disorder with mixed emotions. (*Id.*)

In May 2007, the ALJ sent Plaintiff to Aivars Vitols, D.O., for a physical examination. (Tr. 454-69). At the time, Plaintiff reported constant stiffness and pain in his left shoulder with stiffness in the neck and back. He also reported radicular pain into his entire left leg and significant pain in the right Achilles' tendon. In addition, he experienced numbness into the right hand and he also experienced left arm and left chest pain with discomfort associated with shortness of breath. (Tr. 454). On examination, Dr. Vitols noted that Plaintiff presented with a slow stiff gait. (Tr. 456). Examination of the cervical spine showed actively restricted painful range of motion, and the left shoulder revealed painfully restricted motion with a relative loss of strength associated with pain. (Tr. 457). Range of motion was painfully restricted in all planes. Dr. Vitols diagnosed a chronic cervical sprain and strain; chronic dorsolumbar sprain and strain; left shoulder adhesive capsulitis with rotator cuff syndrome. (Tr. 458).

Dr. Vitols concluded that Plaintiff could exertionally perform light work as long as he did not stand/walk for more than four hours or sit for more than four hours. (Tr. 464-65). Dr. Vitols noted that Plaintiff could never reach overhead with the left arm and could only occasionally reach, push/pull. (Tr. 466). Dr. Vitols thought that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl, and noted that Plaintiff should never work at unprotected heights, moving mechanical parts, or operate a motor vehicle. (Tr. 467-68).

The ALJ also sent Plaintiff for a psychological evaluation with Dr. Bonds, in June 2007. (Tr. 470-83). On mental status examination, Dr. Bonds noted that Plaintiff was mildly depressed about many things in his life and had trouble with insomnia. He also reported having problems with his memory and concentration. (Tr. 473). Plaintiff indicated that he did little around the house, although he might wash the dishes and cook a little. (Tr. 474). Dr. Bonds noted that Plaintiff was easily frustrated by failures on the memory testing and became more frustrated as the questions got harder. (Tr. 475). Memory testing showed functioning in the extremely low range to average range of memory functioning, but his working memory was significantly higher than both his immediate and general memory. (Tr. 476).

Dr. Bonds diagnosed a generalized anxiety disorder and a depressive disorder and assigned a GAF of 50. (Tr. 477). Dr. Bonds concluded that Plaintiff's ability to relate to others was mildly limited and his ability to understand, remember, and follow directions was moderately limited. Dr. Bonds noted that Plaintiff's ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks was not significantly limited, but that Plaintiff's ability to withstand the stress and pressure associated with day-to-day work activities was moderately limited. "Because of [Plaintiff's] depression and anxiety, he would have some difficulty with demands for speed, accuracy, and productivity." (Tr. 478).

In July 2007, Dr. Rivera completed a basic medical form for Montgomery County Department of Jobs & Family Services. (Tr. 452-53). Dr. Rivera concluded that Plaintiff

-12-

could only stand/walk for 30 minutes in an eight hour workday, and could not lift more than 6-10 pounds. Dr. Rivera noted that Plaintiff would be moderately limited in his ability to push/pull, bend, and handle. (Tr. 453).

At the hearing, Plaintiff testified that he also had constant pain throughout the day due to arthritis in both hips. He had to take insulin four to five times a day. He had problems with his left shoulder such that he could not reach above shoulder height without extreme pain. He had shortness of breath. He also had pain in his back when he stood or walked for prolonged periods. (Tr. 574-75). Plaintiff used a cane at the time of the hearing. (Tr. 576). At the hearing, Plaintiff estimated that he could lift six or seven pounds, stand 20 minutes, or walk a block. (Tr. 577-78). Plaintiff testified that the Hepatitis C continued to cause him problems with lifting, such that he felt a burning pain on the left when he tried to lift. (Tr. 578). Plaintiff testified that he continues to experience fatigue and lies down through the day to rest. (Tr. 579). Plaintiff testified that his wife did most of the household chores, although he might occasionally wash up after himself and take the trash out. (Tr. 581).

A vocational expert testified at the hearing. (Tr. 583-89). She was asked to consider a person of Plaintiff's age, education, and work experience who was limited in the manner ultimately found by the ALJ. (Tr. 584-87). The vocational expert testified that such a person could perform approximately 4,000 jobs at the light exertional level and no more than 2000 jobs at the sedentary exertional level. (Tr. 587). If the person could only lift 10 pounds, than the number of light jobs would be reduced to 2500. (*Id.*)

If someone could only stand/walk for 30 minutes a day, the vocational expert noted that light work would be eliminated. (Tr. 588-89).

In a decision dated February 7, 2008, the ALJ found that Plaintiff met the disability insured status requirements of the Act through March 31, 2003. (Tr. 18). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability, and that he had severe impairments, but that his impairments did not, singly or in combination, meet or medically equal any of those listed in the Listing of Impairments. (Tr. 18-21). The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 23).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift ten pounds frequently and twenty pounds occasionally; he could sit for a total of four hours and stand/walk for a total of four hours during a workday, but could not sit, stand, or walk for more than two hours at a time. (Tr. 21). Plaintiff could not reach overhead with his left arm, and "all posturals"[7] could be performed only occasionally. (*Id.*) He could occasionally reach, push, pull, and engage in fine manipulation, but he could not climb ladders or ropes and was restricted to jobs that did not involve working at unprotected heights, around heavy industrial machinery, or driving. (*Id.*) He was limited to low-stress work, which the ALJ defined as work that involved no direct dealing with

---

[7] The term "posturals" refers to climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 136).

-14-

the public, no production quotas, and no close or "over-the-shoulder" supervision. (*Id.*)

The ALJ ultimately determined that, as of his fifty-fifth birthday, Plaintiff was disabled because there were not jobs that he could perform that existed in significant numbers.[8] However, the ALJ determined that prior to his fifty-fifth birthday, he could perform a significant number of jobs in the economy,[9] and therefore was not disabled under the Act. (Tr. 24-25). *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ultimate burden of proof rests on Plaintiff to show that he is disabled – a burden that Plaintiff failed to meet in the instant case. *Casey v. Sec'y of Heath & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Plaintiff maintains that the ALJ erred in his decision because he did not provide adequate reasons for rejecting the opinion of Dr. Rivera that he was "unemployable," that he could lift only six to ten pounds, and could stand and walk for a total of only half an hour during an entire workday. (Doc. 7 at 11-15; *see* Tr. 452-53). A treating source's opinion as to the nature and severity of a claimant's impairments is entitled to controlling

---

[8] The ALJ reached this conclusion by direct application of the Medical-Vocational Guidelines, which enable the Agency fact finder to take administrative notice of the number of unskilled jobs in the national economy based on an assessment of a claimant's exertional limitations, age, education, and work experience. When those four factors are considered, the guidelines can direct a decision of "disabled" or "not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00; *see Heckler v. Campbell*, 461 U.S. 458, 467-68 (1983).

[9] At the September 2007 hearing, the vocational expert identified approximately 6,000 positions in the regional economy that could be performed by an individual of Plaintiff's age, education, and work experience, who had the same RFC as Plaintiff. (Tr. 586-88). The ALJ reasonably relied on this testimony in concluding that Plaintiff could perform a significant number of jobs. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (ALJ may rely on vocational expert's testimony in response to hypothetical question "if the question accurately portrays [the plaintiff's] individual physical and mental impairments").

weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006).

The Court finds that the ALJ gave sufficient reasons for rejecting Dr. Rivera's opinion. "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucrat that he is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). Although the case law is clear that the ALJ's decision must contain specific reasons for the weight given to the treating source, there is no requirement that the ALJ explain each of a litany of specific factors as suggested by the Plaintiff.[10] (Doc. 14 at 2).

First, the ALJ explained that Dr. Riveria "provided no objective support for her conclusions and her opinion [was] not supported by the treatment records." (Tr. 22). The Sixth Circuit has repeatedly upheld the rejection of treating physician opinions on this basis. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory

---

[10] The treating physcian's opinion must be weighed under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)).

-16-

statements from physicians are properly discounted by ALJs."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").

The ALJ also rejected Dr. Rivera's opinion because it appeared "to be solely based on an uncritical acceptance of the claimant's subjective complaints." (Tr. 22). While the Agency will consider a claimant's statements about his symptoms,[11] those statements cannot alone establish that the claimant is disabled; there must be medical signs and laboratory findings that show that the individual has impairments that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Moreover, to the extent that a physician's report is based on a claimant's allegations, it is equally insufficient to establish disability. *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints were unsupported by objective findings). Additionally, the Court finds comfort in the fact that the ALJ relied on Dr. Vitols and Dr. Bonds, who were not merely reviewing physicians, but who performed consultative physical examinations on the Plaintiff. (Tr. 454-58; 470-78).

---

[11] The ALJ discussed Plaintiff's various allegations but concluded that they were not entirely credible. (Tr. 22-23). The determination of creibility is a factual matter an the ALJ's finding is entitled to deference. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) ("Since the ALJ has the opportunity to observe the demeanor of a witness , his conclusions with respect to credibility shoudl not be discarded lightly and should be accorded deference."). Plaintiff has not challenged the ALJ's credibility finding and therefore the Court declines to address the issue.

While Plaintiff may disagree with the ALJ's decision, his decision is clearly within the "zone of choices" afforded to him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference."). The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

### IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Freddie Matthews was not entitled to disability insurance benefits or supplemental security income before the age of fifty-five, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED**.

Date: 3/1/11

Timothy S. Black
United States District Judge